UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

CLASS REPRESENTATIVES DOLLY SALERNO
ROBERT SALERNO, and DIANE AMANTIA,
individually and on behalf of all others similarly situated,

                           Plaintiffs,                           Civil Index No.
                                                         1:18-cv-00304-WKS

          v.

CITY OF NIAGARA FALLS, *et al.*,

                           Defendants.

───────────────────────────────────────

## DEFENDANTS'[1] JOINT MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

───────────────────────

[1]     Defendants joining this consolidated motion include City of Niagara Falls; Niagara Falls Water Board; Occidental Chemical Corporation ("Occidental"); Glenn Springs Holdings, Inc. ("Glenn Springs"); GHD Services Inc.; Miller Springs Remediation Management, Inc. ("Miller Springs"); Sevenson Environmental Services, Inc.; NRC NY Environmental Services, Inc.; Roy's Plumbing, Inc.; and Scott Lawn Yard, Inc.  Plaintiffs dismissed Occidental Petroleum Corporation as a Defendant, with prejudice, on August 13, 2018.  (Dkt. 32).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES.................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

COMPLAINT ALLEGATIONS ............................................................................. 3

    A.    The Government's Remediation of the Love Canal Site ............................... 3

    B.    The Government's Continued Oversight of the Love Canal Site .................. 7

    C.    Plaintiffs' Claims........................................................................................... 9

ARGUMENT ..........................................................................................................11

POINT I      CERCLA PREEMPTS THE ENTIRE COMPLAINT ...............................11

POINT II    THE COMPLAINT DOES NOT MEET *TWOMBLY* AND *IQBAL* ...........15

    A.    Plaintiffs' Allegations about the "Negligent" Remediation
        Fail under *Twombly* and *Iqbal* ...........................................................15

    B.    The Allegations about Plaintiffs also Fail under
        *Twombly* and *Iqbal* .............................................................................18

CONCLUSION ......................................................................................................21

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbo-Bradley v. City of Niagara Falls,*
   132 A.D.3d 1318 (4th Dep't 2015) ...............................................................15

*Abbo-Bradley v. City of Niagara Falls,*
   No. 13-CV-487-JTC, 2013 WL 4505454 (W.D.N.Y. Aug. 22, 2013)...........15

*Adinolfe v. United Techs. Corp.,*
   No. 10-CV-80840, 2011 WL 240470 (S.D. Fla. Jan. 18, 2011) ....................19

*Amidax Trading Grp. v. S.W.I.F.T. SCRL,*
   671 F.3d 140 (2d Cir. 2011) (per curiam)............................................... 11, 17

*Andres v. Town of Wheatfield,*
   No. 17-cv-377 (CRR) (W.D.N.Y. June 18, 2018) .........................................2, 18, 19, 20

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................2, 11, 15, 18, 20, 21

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007) ...........................................................................11

*Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.,*
   690 F. Supp. 2d 115 (W.D.N.Y. 2010).......................................................... 3

*Baker v. Saint-Gobain Performance Plastics Corp.,*
   232 F. Supp. 3d 233 (N.D.N.Y. 2017), *appeal filed*, No. 17-cv-03948 (2d
   Cir. Dec. 8, 2017) .........................................................................................21

*Bartlett v. Honeywell Int'l, Inc.,*
   260 F. Supp. 3d 231 (N.D.N.Y. 2017), *aff'd* No. 17-1907-CV, 2018 WL
   2383534 (2d Cir. May 25, 2018)..........................................................*passim*

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................2, 11, 15, 18

*Coastline Terminals of Conn., Inc. v. USX Corp.,*
   156 F. Supp. 2d 203 (D. Conn. 2001)............................................................12

*Feikema v. Texaco, Inc.,*
   16 F.3d 1408 (4th Cir. 1994) .........................................................................12

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000) .................................................................................12

*Harrington v. Daiso Japan*,
    No. 10-cv-3876 (SC), 2011 WL 2110764 (N.D. Cal. May 26, 2011) ...........................11

*Jianjun Lou v. Trutex, Inc.*,
    872 F. Supp. 2d 344 (S.D.N.Y. 2012).......................................................... 3

*Loccenitt v. City of New York*,
    No. 11-cv-5651 (PAC) (HBP), 2012 WL 3822213 (S.D.N.Y. Sept. 4, 2012) ...............21

*New Mexico v. Gen. Elec. Co.*,
    467 F.3d 1223 (10th Cir. 2006) .......................................................... 12, 13

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*,
    596 F.3d 112 (2d Cir. 2010) .....................................................................12

*Pinares v. United Techs. Corp.*,
    No. 10-cv-80883, 2011 WL 240522 (S.D. Fla. Jan. 19, 2011) ......................................20

*Reece v. AES Corp.*,
    638 F. App'x 755 (10th Cir. 2016)..............................................................21

*Stearns v. Select Comfort Retail Corp.*,
    763 F. Supp. 2d 1128 (N.D. Cal. 2010) .....................................................20

*Town of Halfmoon v. Gen. Elec. Co.*,
    105 F. Supp. 3d 202 (N.D.N.Y. 2015).................................................... 12, 14

*United States v. Akzo Coatings of Am., Inc.*,
    949 F.2d 1409 (6th Cir. 1991) .....................................................................12

*United States v. Hooker Chems. & Plastics Corp.*,
    No. 79-CV-990C (W.D.N.Y. filed Dec. 20, 1979) .....................................4, 5

*Volpe v. Am. Language Commc'n Ctr., Inc.*,
    200 F. Supp. 3d 428 (S.D.N.Y. 2016)  *aff'd* 692 F. App'x 51 (2d Cir. 2017)................... 3

**Statutes**

40 C.F.R. Part 300...................................................................................... 5

42 U.S.C. § 9605 ....................................................................................... 5

42 U.S.C. § 9622(e)(6) ...............................................................................12

CERCLA § 122(e)(6) .................................................................................13

Fed. R. Civ. P. 8 ................................................................................................20

Fed. R. Evid. 201(b)(2) ....................................................................................... 3

**Other Authorities**

48 Fed. Reg. 40658-01 ........................................................................................ 4

61 Fed. Reg. 1405-02 .......................................................................................... 6

69 Fed. Reg. 12608-1 .......................................................................................... 5

69 Fed. Reg. at 12609 ....................................................................................6, 18

69 Fed. Reg. 12609-611 ...................................................................................... 5

https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=secon
d.cleanup&id=0201290#bkground (last visited, August 20, 2018)................................ 8

https://www.epa.gov/newsreleases/love-canal-revealed-national-problem-
superfund-provided-solution (last visited August 20, 2018) ........................................... 9

## PRELIMINARY STATEMENT

Plaintiffs' Complaint (Dkt. 28) should be dismissed for the same reasons the Second Circuit held in a remarkably similar case that was decided months *after* Plaintiffs filed this lawsuit:  state law tort claims are preempted where they are based on allegations that a government-mandated environmental remedy is ineffective and purportedly causing personal injury and property-related damage.  *See Bartlett v. Honeywell Int'l, Inc.*, No. 17-1907-CV, 2018 WL 2383534, at * 4  (2d Cir. May 25, 2018) (summary order) ("[W]e agree with the district court that CERCLA preempts the residents' claims because the residents merely challenge the adequacy of the consent decree itself.").

Here, the linchpin of Plaintiffs' claims is that the New York State Department of Environmental Conservation's ("DEC") and United States Environmental Protection Agency's ("EPA") Love Canal landfill remedy  ("Remedy" and "Love Canal Site," respectively) is ineffective.  (*See, e.g.,* Comp. ¶¶ 1-3).  Specifically, Plaintiffs allege that the Love Canal's containment system, which was constructed over three decades ago as part of the government-mandated Remedy under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") and is subject to ongoing monitoring and maintenance under CERCLA, is not working and leaking chemicals into the area, including into sewers.  (*E.g., id.* ¶¶ 6, 7, 59, 78(b, d, f), 108).  The three named Plaintiffs seek certification of a class, for alleged personal injuries and property damage, and request damages and "equitable relief in the form of complete remediation . . . and . . . a medical monitoring trust fund."  (*Id.* ¶ 10).

Dozens of state and federal reports, issued over decades, contain data from extensive, continuous monitoring and testing that shows that Plaintiffs' claims are false.

That lack of merit, however, is irrelevant to a preemption analysis.  As the Second Circuit explained in May, CERCLA "prohibits [Defendants] from commencing any remedial action except for those expressly authorized" by the government, *Bartlett*, 2018 WL 2383534, at *4, and therefore claims that defendants' remedial activities were ineffective and give rise to tort liability are preempted.

In addition to being preempted, the Complaint should be dismissed under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) because it is implausible.  While relying heavily on conclusory and formulaic allegations, the Complaint does not plausibly allege that any Defendant failed to comply with the government's consent decrees, that Defendants performed the government's directives negligently, or that the Remedy is failing.  Indeed, the relevant facts the Complaint does describe are drawn from governmental reports that approve Defendants' conduct and show the Remedy remains protective of human health and the environment.  *See Bartlett*, 2018 WL 2383534, at *5 (dismissing negligent remediation claims where defendant "complied fully with its responsibilities under CERCLA and the consent decree").

The allegations about Plaintiffs are no better.  The Complaint names three individuals to represent its putative classes.  It contains little about their individual circumstances.  As Judge Reiss, sitting by designation in this District, recently found in a case involving many of the same parties and counsel:  "[Plaintiffs] don't provide any specificity as to how, when or where they were exposed; how, when or where such chemicals entered their property; and they don't provide a linkage between their exposure and their injuries."  *Andres v. Town of Wheatfield*, No. 17-cv-377 (CRR) (W.D.N.Y. June 18,

2018), Transcript, Dkt. 91, at 39:12-13, 39:19-24.[2]  For these independent reasons, the

Complaint should be dismissed.

## COMPLAINT ALLEGATIONS

### A.   The Government's Remediation of the Love Canal Site

The government agencies' roles with respect to the Remedy and Love Canal

Site are alleged in the Complaint and demonstrated by the documents cited in it, as well as

other judicially-noticeable documents.[3]  As shown below, the governmental agencies

responsible for the Love Canal Site Remedy have had all of the roles discussed in *Bartlett*

(and more) that gave rise to the Second Circuit's and Northern District of New York's

finding of preemption there.

The Love Canal Site is an abandoned canal that was used as a waste disposal

area between 1942 and 1954.  (Comp. ¶ 41).  Starting in the late 1970s, the United States

government and New York State stepped in to identify, define, and remedy the waste that

had been disposed at the Love Canal Site.  (*Id.* ¶¶ 44-67).  This Court has presided over

proceedings concerning the Love Canal Site and its Remedy since the late 1970s.  *See, e.g.,*

---

[2]      For ease of reference, Judge Reiss' decision is also attached as Appendix A.

[3]      The Court may consider the Exhibits referenced herein because, in the case of
Exhibits 1, 2, 14, and 15, those documents are referenced in Plaintiffs' Complaint, *Avgerinos
v. Palmyra-Macedon Cent. Sch. Dist.*, 690 F. Supp. 2d 115, 124-26 (W.D.N.Y. 2010), and
because all of the Exhibits are EPA or DEC documents or court records that are judicially
noticeable government records that are available on the agency websites and in the public
record.  *See Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428, 431 n.1 (S.D.N.Y.
2016) ("[c]ourts routinely take judicial notice of documents retrieved from official
government websites") (citing Fed. R. Evid. 201(b)(2), collecting cases), *aff'd*, 692 F. App'x
51 (2d Cir. 2017); *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 349 n.6 (S.D.N.Y. 2012)
(taking judicial notice of court records, collecting cases).

*United States v. Hooker Chems. & Plastics Corp.,* No. 79-CV-990C (W.D.N.Y. filed Dec. 20, 1979) ("Government Litigation").

In 1978, the New York State Department of Health ("DOH") began testing at the Love Canal Site and its surrounding neighborhood.  (Comp. ¶¶ 44-45); *see also* Amendment to Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 48 Fed. Reg. 40658-01 (Sept. 8, 1983).  It was followed the same year by President Carter's declaration, which "provided Federal funding for remedial work to contain the chemical wastes at the Site."  (Comp. ¶ 46).  In May 1980, President Carter issued a second declaration that "established the boundaries of the Emergency Declaration Area ('EDA')." (*Id.* ¶ 47).  It also provided funds so that the Federal Emergency Management Agency, together with DEC, could relocate families, and contain and remediate the Site.  (*Id.*) "Between 1978 and 1982[,] a number of remedial cleanup measures were conducted at the Site by []DEC and its contractors."  (*Id.* ¶ 53).

After CERCLA was enacted in 1980, EPA and DEC jointly remediated the Site pursuant to a 1982 Decision Memorandum and Cooperative Agreement (Exhibit[4] 1), and the Site was added to the National Priorities List in 1983.  (Comp. ¶ 50); *see also* Amendment to Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 48 Fed. Reg. 40658-01.  Under the 1982 Decision Memorandum (referred to in the Complaint as the "1982 DM" (Comp. ¶ 50)), a precursor to a Superfund Record of Decision ("ROD"), EPA designated CERCLA funds to pay for the Remedy, and identified eight Remedy components that EPA and DEC would implement.  (Exhibit 1).

---

[4]    References to "Exhibit" herein are to the Exhibits attached to the accompanying affidavit of Kevin M. Hogan, Esq., sworn to August 20, 2018.

EPA and DEC implemented the Remedy in a series of components consisting partly of two caps under a layer of soil, and a perimeter trench for leachate collection. (Comp. ¶ 48).  The 1982 DM also covered, among other things, investigation and remediation of the sanitary and storm sewers, and "long-term monitoring to ensure the effectiveness of the cleanup activities."  (*Id*. ¶ 50); *see also* Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 69 Fed. Reg. 12608-1, 12609-611 (Mar. 17, 2004).

Each component of the Remedy was selected by the government agencies through an "EPA Superfund ROD," and each modification to the Remedy was made by EPA through an amended ROD or Explanation of Significant Differences ("ESD"), all after public notice and comment.  (Comp. ¶ 53).  A timeline of the governments' additional remediation work, and the RODs and ESDs that supported them, is as follows:

- **1985:** "EPA issued the 1985 ROD with a selected remedy to remediate the sediments in the sewers and the creeks in the EDA." (*Id*. ¶ 51; 1985 ROD, Exhibit 2).  DEC also installed "a second and expanded engineered 40-acre cap . . . over the already existing clay cap to further reduce infiltration of precipitation."  (Comp. ¶ 54);

- **1986-1987:**  "The remediation of the contaminated sewers was performed during 1986 and 1987." (*Id*. ¶ 55).  "These remedial actions conformed to the [EPA's] selected remedy of the 1985 ROD which required the removal of dioxin contaminated sediments from the creeks and sewers."  (*Id*.; 1987 ROD, Exhibit 3);

- **1988:**  EPA mandated that soils in the Love Canal neighborhood be remediated, including excavation, stabilization, and disposal of certain soils.  (1988 ROD, Exhibit 4);

- **1989:**  EPA specified new procedures for dewatering, treating, transporting, and/or destroying certain sediments and materials. (1989 ESD to 1985 and 1987 RODs, Exhibit 14, at 8).  In addition, a Partial Consent Decree was entered in the Government Litigation that required Occidental to undertake the storage, treatment, and disposal of sediments that DEC had excavated from Love Canal area sewers and creeks, in accordance with the 1987 ROD and CERCLA. (Exhibit 5, at 2-7; 42 U.S.C. § 9605; 40 C.F.R. Part 300);

- **1991:** EPA approved off-site disposal for certain soils from the Love Canal neighborhood (Amendment to the 1988 ROD, Exhibit 6);

- **1994:** New York entered into a Consent Judgment that resolved certain claims against Occidental, which required Occidental, subject to DEC's continued direction, oversight, and enforcement, to take over the Remedy's operations, maintenance, and monitoring ("OM&M") from DEC.  (Exhibit 7, at 7-10, Appendix B).  This Court retained jurisdiction to enforce the Consent Judgment.  (*Id.* § 16);

- **1996:** The United States entered into a Consent Decree that resolved certain claims against Occidental, and, again subject to EPA's continued review and enforcement, required Occidental to perform the Remedy's OM&M obligations.  (Exhibit 8, at 8-9).  Before entry, the 1996 Consent Decree was published in the Federal Register, and the public was invited to file comments.  61 Fed. Reg. 1405-02.  This Court also retained jurisdiction to enforce the Consent Decree.  (Exhibit 8 ¶ 39).  In the same year, EPA authorized thermal treatment and/or land disposal of certain materials at an off-site incinerator and landfill.  (1996 ESD to the 1987 ROD, Exhibit 9);

- **1998**: EPA permitted landfill disposal of certain materials, in lieu of incineration.  (1998 ESD, Exhibit 14, at 8).

EPA issued its Preliminary Close-Out Report for the Remedy in September 1999, and a Final Close-Out Report for the Remedy in March 2004.  Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 69 Fed. Reg. at 12609; *see also* Exhibit 14 (Table 1 - Chronology of Love Canal Site Events).  The reports reflect EPA's determination that, in accordance with CERCLA, construction of the Remedy was complete, it was implemented consistent with the numerous RODs and ESDs, and it was protective of human health and the environment.  Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 69 Fed. Reg. at 12609.  EPA determined that ***"all appropriate response actions, under CERCLA, have been implemented at the Site and no further response actions, other than monitoring, operation, maintenance and compliance with institutional controls, are necessary."***  *Id.* at 12611 (emphasis added).

**B.     The Government's Continued Oversight of the Love Canal Site**

The agencies continue to oversee on an ongoing basis the perpetual operation, monitoring, and maintenance of the Remedy.  Since 1994, DEC has directed the OM&M activities that are performed by Defendant Glenn Springs or its contractor, has reviewed and approved the annual reports on what was observed, and each year has confirmed based on current data that the Remedy continues to be operating as intended and is protective of human health and the environment.  (*E.g.*, Exhibit 10 (2017 Site Management Report), Exhibit 11 (DEC Acceptance Letter)).  Through its required annual review of the annual OM&M reports (Exhibit 7, Appendix B § 2), New York State has made this finding 23 times—which covers the administrations of five different New York State Governors, and nine different DEC Commissioners.

EPA also has responsibility to conduct extensive evaluations of the Remedy. It documents its findings in Five-Year Reviews, including the Five-Year Review on which Plaintiffs rely to construct their Complaint.  (Comp., p. 10 n.1).  These reports have been issued in 2003, 2008, and 2014 (Exhibits 12, 13, 14)—spanning two different Presidential administrations and 10 different EPA Administrators.  All of this was done after notice to the public and opportunity for public comment.  (Exhibit 12, at 16; Exhibit 13, at 15; Exhibit 14, at 15).  In each of these reports, EPA has confirmed based on current data that "*[o]verall, the remediation system for the Site is functioning as designed. Continued monitoring at the Site ensures that no exposures to human or environmental receptors will occur in the future.*"

(*E.g.*, Exhibit 14, at 18 (emphasis added)).  According to its publicly-available website, EPA's next Five-Year Review will be performed in late 2018.[5]

The governmental agencies confirmed further that the Remedy is working as intended and protective of human health and the environment after a small quantity of chemicals were discovered in January 2011 in an isolated location outside of the Love Canal containment system within a 25-foot deep sewer while local government authorities were performing repairs near the Love Canal Site, on Colvin Boulevard.  (Comp. ¶ 60-61). In response to this discovery, EPA determined that additional remedial work was required, and, consistent with federal law and the Consent Decrees, Glenn Springs, at the direction of, and under the oversight of, DEC and DOH, subsequently performed that remedial work on the sewer.  (Comp. ¶¶ 65-66) (Exhibit 14, at 14).  That work was documented in a March 2011 report (Comp. ¶ 66), that was submitted to DEC and EPA.  (Exhibit 15).  In its 2014 Five-Year Review, EPA explained that it had "reviewed the data and documentation of the sewer repair project in order to confirm the cleanup was performed in a comprehensive and appropriate manner." (Exhibit 14, at 14).  And in that Five-Year Review, EPA concluded that the Remedy remains effective and protective of human health and the environment. (Comp. ¶ 67).  As Plaintiffs' Complaint admits, EPA found "that the contamination found at the Colvin Boulevard repair area was not the result of recent migration from the Site nor was it the result of a failure of the containment remedy."  (*Id.*)   In other words, according to EPA, the containment system is "effective" and "operating as designed." (Exhibit 14, at

---

[5]    (*See*, *e.g.*, EPA Superfund Site:  Love Canal, Niagara Falls, New York https://cumulis.epa.gov/supercpad/SiteProfiles/index.cfm?fuseaction=second.cleanup&id =0201290#bkground (last visited, August 20, 2018)).

15).[6]  Plaintiffs' Complaint contains no sufficient or plausible factual allegations to the contrary.

## C.     Plaintiffs' Claims

The three named Plaintiffs are Dolly and Robert Salerno and Diane Amantia. (Comp. ¶¶ 12-13).  They purport to bring this putative class action on behalf of, among others, "all current and former residents of the Love Canal Area . . . for personal injury." (Comp. ¶ 95(a)).  The Salernos and Mrs. Amantia allege that it was not until 1994 and 2002, respectively, that they purchased their homes in the area (Comp. ¶¶ 12-13)—both well after the disposal of waste in the 1940s and 50s and well after the Love Canal containment system was constructed pursuant to the Remedy.

Despite the conclusions of the very government reports and other documents that they cite in their Complaint, Plaintiffs allege in conclusory manner that in their view the remediation was ineffective and negligently implemented and is creating a so-called "public health catastrophe."  (Comp. ¶ 6 ("Defendants' conduct- which includes but is not limited to the wrongful dumping of toxic substances, the negligent, reckless, and/or ineffective remediation of such contamination, the negligent and/or reckless performance of work in, around, and adjacent to the sewers in proximity to Love Canal and repeated

---

[6]     Just two weeks ago, EPA issued a press release that, again, confirmed that the Remedy remains fully protective of human health and the environment:

> [t]he data, which is evaluated by EPA and New York State, continues to show that the leachate collection system, the barrier drain, the landfill cap, and the monitoring wells are all intact and working properly. EPA also conducts comprehensive reviews of all data and information every five years to ensure that the remedy remains fully protective. These reviews will be conducted into perpetuity.

News Release, EPA, Love Canal Revealed a Nat'l Problem; Superfund provided a Solution, *available at* https://www.epa.gov/newsreleases/love-canal-revealed-national-problem-superfund-provided-solution (last visited August 20, 2018).

failures to alert the public at large (and Plaintiffs in particular) of concerns regarding the neighborhood's safety—has created a public safety catastrophe.").  Without plausible or sufficient factual allegations in support, Plaintiffs allege further that the Love Canal Site's containment system is failing.  (*See, e.g.*, *id.* ¶ 59 ("Defendants knew or should have known that Love Canal waste ***was not contained and migrating off of the site and into the sewer system*** into the residential area."); ¶ 71(u) ("[A]ll the above-referenced contaminants  . . . were and continue to be released, discharged, and disbursed throughout the Love Canal area ***from the Site and through the storm water and sanitary sewer systems***."); ¶ 71(v) ("The contamination has been allowed to ***migrate*** onto Plaintiffs' and Class Members' properties . . . .") (emphases added)).

The Salernos and Mrs. Amantia allege that they "regularly spent time in their yard and ingested, inhaled and had direct dermal contact with surface and subsurface soil and materials."  (*Id.* ¶¶ 87, 88).  Nothing is alleged with respect to what these "materials" consist of, or why they are relevant.  Likewise, the Salernos and Mrs. Amantia allege they have been "exposed to chemical vapors in and around their home."  (*Id.* ¶ 87).  The Complaint does not identify these "chemical vapors," or how they relate to any Defendant or the Love Canal Site.

The Complaint asserts four state law tort claims, under theories of negligence (¶¶ 105-128), strict liability (¶¶ 129-135), nuisance (¶¶ 136-149), and trespass (¶¶ 150-160). In addition to money damages (*see* Prayer for Relief), Plaintiffs seek "equitable relief in the form of complete remediation of the [alleged] contamination within, around, and under their properties as well as the establishment of a medical monitoring trust fund" (¶ 10).

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.[7]

That Plaintiffs seek to certify a class action does not reduce these requirements.  The allegations of the named Plaintiffs must be sufficient on their own. *Harrington v. Daiso Japan*, No. 10-cv-3876 (SC), 2011 WL 2110764, at *3 (N.D. Cal. May 26, 2011) ("[T]here is no class until the Court certifies one.  Until then, Plaintiffs bring this action on behalf of Harrington and Ramos alone, and they must allege facts sufficient to support each individual cause of action.").

## POINT I

## CERCLA PREEMPTS THE ENTIRE COMPLAINT

Just three months ago, the Second Circuit re-affirmed in an environmental case very similar to this one that the doctrine of conflict preemption serves to prevent conflicts between federal directives and state tort law, and, in this context, to protect Congress's intent to fashion an orderly procedure for directing and monitoring CERCLA cleanups.  *Bartlett*, 2018 WL 2383534, at *4.  As the Second Circuit explained, conflict

---

[7]    On a motion to dismiss, the Court may "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011) (per curiam).

preemption turns on "whether it is impossible for [defendant] to comply with both state tort

law and CERCLA or whether the residents' state-law claims stand as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress.'" *Id.*;

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (same);

*see also Coastline Terminals of Conn., Inc. v. USX Corp.,* 156 F. Supp. 2d 203, 208-209 (D.

Conn. 2001); *Feikema v. Texaco, Inc.*, 16 F.3d 1408, 1416 (4th Cir. 1994) (dismissing certain

claims as preempted by the Resource Conservation and Recovery Act).

   Federal regulations and CERCLA consent orders such as those at issue here

are directives that have the same preemptive effect as federal statutes.  *See Town of Halfmoon*

*v. Gen. Elec. Co.*, 105 F. Supp. 3d 202, 217-18 (N.D.N.Y. 2015) (dismissing certain state law

claims as preempted; reasoning that "[i]t is impossible for [defendant] to comply with . . .

the [CERCLA] Consent Decree without subjecting itself to liability under state . . . law");

*United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1454-57 (6th Cir. 1991) (dismissing

state law claims as preempted by CERCLA and consent order); *cf. Geier v. Am. Honda Motor*

*Co.*, 529 U.S. 861, 881-84 (2000) (conflict preemption prevents state law from obstructing

federal vehicle safety statute and regulations).[8]

   Under CERCLA, a defendant operating pursuant to a consent decree is

"prohibit[ed] … from commencing any remedial action except for those expressly

authorized in the consent decree."  *Bartlett*, 2018 WL 2383534, at *4 (citing 42 U.S.C. §

9622(e)(6)).  Therefore, a state law finding that a CERCLA remedy undertaken pursuant to

governmental directives and consent decrees is not effective and purportedly causing

---

[8]  Conflict preemption applies even if the federal preempting law, like CERCLA here, contains savings clauses.  *Town of Halfmoon*, 105 F. Supp. 3d at 217 ("conflict preemption is an affirmative defense available to [defendant] 'notwithstanding the presence of the savings clauses'") (quoting *New Mexico v. Gen. Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006)).

exposure, is subject to conflict preemption.  *Id.*  Otherwise, Defendants would be left "in the unenviable position of being held liable for monetary damages because they are complying with an EPA-ordered remedy which [they] have no power to alter without prior EPA approval."  *New Mexico*, 467 F.3d at 1250.  Such a determination also would impermissibly interfere with Congress's intent to fashion an orderly procedure for monitoring CERCLA cleanups.  *See Bartlett*, 2018 WL 2383534, at *4.

   The decisions by the Northern District of New York and Second Circuit in *Bartlett* are squarely on point.  In *Bartlett*, just like here, plaintiffs claimed that that the defendant (Honeywell) failed to employ reasonable care in implementing and choosing the method of remediation of the site; maintained a dangerous condition on the site; and negligently implemented the remedy.  260 F. Supp. 3d at 245-46.  Plaintiffs further alleged that as a result of the defendant's actions that "toxic chemical particulates" migrated from the site and caused exposure to people and property in the area.  *Id.* at 246.

   The Northern District of New York held that these claims were preempted, and the Second Circuit affirmed.  The Northern District reasoned that the complaint sought, among other things, "to hold Defendant liable for activities consistent with the Consent Decree on the theory that Defendant should have conducted additional remediation that would have violated CERCLA § 122(e)(6)."  260 F. Supp. 3d at 246.  Thus, the court held that "Plaintiffs' claims conflict with CERCLA and the Consent Decree and are, therefore, preempted."  *Id.*

   Similarly, the Second Circuit reasoned that because "DEC and EPA reviewed and approved" the remedial activities, they "became part of the binding consent decree." *Bartlett*, 2018 WL 2383534, at *4.  Therefore, the complaint's attacks on those activities

were preempted as impermissible, "transparent[] attack[s]" on "the consent decree itself." *Id.* In addition, the Second Circuit found that the allegations that defendant was negligent because it did not conduct additional testing to determine the emissions implications of different remedial measures were likewise preempted. *Id.*[9] The Second Circuit ruled that "CERCLA preempts the residents' attempts to impose state tort law liability on [defendant] for not going above and beyond a testing regime which the EPA itself described as extensive." *Id.* at *5 (internal quotation marks and citation omitted).

The same allegations that the Northern District of New York and Second Circuit found to be preempted are made by Plaintiffs here. The Complaint here alleges that the Remedy's "initial remediation" and "ongoing maintenance" are ineffective, negligently implemented, and not working (Comp. ¶¶ 6, 78(b, c), 125, 126), despite EPA's and DEC's continuous review and approval of the Remedy and oversight of the ongoing maintenance and monitoring. (*E.g.*, Exhibits 10-15). As in *Bartlett*, Plaintiffs' claims are "transparent attacks" on the Consent Decree, and preempted. 2018 WL 2383534, at *4.

Indeed, the Consent Decrees here are in key respects just like the consent decree that the Northern District and Second Circuit found to preempt the claims in *Bartlett*. Entered after public notice and comment (Exhibit 16 ¶ 94), the *Bartlett* consent decree required the defendant to design and implement the CERCLA remedy and its OM&M plan

---

[9]    Compared with preemption involving other federal statutes, this extensive back-and-forth among the agencies, potentially responsible parties, and the public, under the supervision of a federal court interpreting a comprehensive, mandatory statutory scheme, is why courts recognize CERCLA's preemptive effect when plaintiffs seek state law damages from defendants involved with CERCLA remedies. *See Bartlett*, 2018 WL 2383534, at *3 ("In assessing conflict preemption in the CERCLA context, we are mindful that two of CERCLA's purposes are 'to encourage settlements and the prompt cleanup of contaminated sites,'" and that CERCLA is rooted in "the importance of efficiency and regulatory expertise in effecting a remedy") (quoting *Town of Halfmoon*, 105 F. Supp. 3d at 219).

subject to DEC's ongoing supervision (*id.* ¶¶ 21(a), 33, 34, 35), vested jurisdiction in the district court to enforce and interpret the consent decree (*id.* ¶ 44), and remains in force until further order of the court.  (*Id.* ¶ 106).  Similarly, the Consent Judgment and Consent Decree here require Occidental (or Glenn Springs) to carry out the DEC-designed-and-built CERCLA Remedy's OM&M subject to DEC's ongoing supervision until further order of the court (Exhibit 7, at 7-10, Appendix B; Exhibit 8, at 8-9), and vested continued enforcement jurisdiction in the district court (Exhibit 7 § 16; Exhibit 8 ¶ 39).  The Consent Decree here was also entered after extensive public notice and comment.  (Exhibit 8 ¶ 40).

In sum, CERCLA and the Consent Decrees here have the same preemptive effect as in *Bartlett* and Plaintiffs' claims should be dismissed.[10]

## POINT II

### THE COMPLAINT DOES NOT MEET *TWOMBLY* AND *IQBAL*

The Complaint also should be dismissed under *Twombly* and *Iqbal*.  It does not provide sufficient or plausible allegations concerning (i) the Defendants' supposed ineffective or negligent remediation activities, or (ii) the Plaintiffs' circumstances.

### A.    Plaintiffs' Allegations about the "Negligent" Remediation Fail under *Twombly* and *Iqbal*

As for the insufficiency of the allegations concerning the Defendants' purported inadequate or negligent remediation, *Bartlett*, again, is directly on point.  The

---

[10]    As the District Court in *Bartlett* recognized, recent Love Canal opinions in other cases have no relevance to this conflict-preemption analysis.  *Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487-JTC, 2013 WL 4505454 (W.D.N.Y. Aug. 22, 2013) (remanding case to state court on ground that *express* preemption is not an independent ground for federal question jurisdiction); *Abbo-Bradley v. City of Niagara Falls*, 132 A.D.3d 1318, 1321-22 (4th Dep't 2015) (dismissing nuisance and trespass claims asserted by infants who lacked required property interests, but rejecting argument that judicial estoppel barred plaintiffs' state law claims about the Remedy).

Northern District noted that "all of the factual allegations that form the basis for Plaintiffs'
claims relate to actions that were clearly contemplated in the Consent Decree."  260 F.
Supp. 3d at 246.  Thus, the court explained, like the Plaintiffs here, the *Bartlett* "Plaintiffs
fail[ed] to allege facts that *plausibly* give rise to an inference that Defendant executed the
Consent Decree negligently; rather, at best, they merely assert that the chosen remedy was
inadequate."  *Id.* (emphasis added).

   The Second Circuit ruled further that plaintiffs' "claim that [defendants] ran
afoul of state tort law (and violated the consent decree) . . . [wa]s *implausible*" because of the
lack of supporting allegations and the government's finding to the contrary.  2018 WL
2383534, at *5. (emphasis added).   As the examples in the table below show, the allegations
about Honeywell's historic disposal, public statements about the cleanup, and negligent
performance of the consent decree's terms—which the Second Circuit found to be
implausible in *Bartlett*—are very similar to Plaintiffs' allegations here:

| *Bartlett* Complaint (Exhibit 17) | *Salerno* Complaint |
|---|---|
| ¶ 88:  "For decades, Honeywell and its predecessor companies dumped toxic chemicals into Onondaga Lake. . . .  As a result there is now extensive contamination of Lake sediments by chemicals known to be extremely hazardous to human health and the environment . . . ." | ¶ 41:  "Between 1942 and 1952, the Hooker Chemicals & Plastics Corporation (now Occidental Chemical Corporation) disposed of approximately 22,000 tons of drummed and liquid chemical wastes . . . into the abandoned canal."  *See also* ¶ 78(a). |
| ¶ 195:  "The Plaintiffs and other members of the public were further falsely assured by Defendant Honeywell that: (i) extensive testing had been performed in order to predict potential emissions, including bench-scale testing, wind-tunnel testing, flux-chamber testing, odor characterization, collection of site-specific meteorological data, and dispersion modeling; (ii) air monitoring would be conducted during [sediment consolidation ("SCA")] | ¶ 78 alleging that Occidental's supposed "misconduct" included (e) "failing to report to relevant authorities and/or the public that toxins were escaping from the Love Canal containment system following its construction and continuing to the present day"; "(g) failing to report to relevant authorities and/or the public that Love Canal toxins were and are present within area sewers and/or water systems and/or utility corridors"; and "(h) failing to advise |

| | |
|---|---|
| operations to ensure protection in the event any emissions levels were exceeded; and (iii) contingency plans, such as covering the geotubes or reducing or ceasing dredging operations, would be implemented to correct the problem, should it be found that the SCA (Wastebed 13) was generating 'nuisance' odors." | area residents, including Plaintiffs, of the dangerous nature of the toxins to which they were exposed beginning from the time of the initial dumping of toxins at Love Canal and continuing to the present." |
| ¶ 247:  "As a result of Honeywell's failure to perform or complete an Air Pathway Analysis and/or the Phase I Emissions Work Plan and/or the Revised Emissions Work Plan, as required by the Consent Decree and [Remedial Design Workplan], Honeywell failed to discover that the geotubes were not capable of containing the emissions of the hazardous chemicals and thus failed to implement mitigative measures and appropriate controls." | ¶ 79(a) alleging that GSH's supposed "misconduct" included "tortiously executing its duties of operation, maintenance, and monitoring (OM&M) of the Love Canal Site, including but not limited to: (i) groundwater monitoring at various wells on or around the site; (ii) groundwater elevation measurement at piezometers located around the site; (iii) operation and maintenance of the leachate collection and treatment system; and (iv) an annual performance assessment of the leachate Collection and treatment facility and the barrier drain system." |

In *Bartlett*, the Second Circuit found plaintiffs' claims implausible because the state and federal agencies with expertise on environmental remediation had determined that defendant "complied fully with its responsibilities under CERCLA and the consent decree." *Bartlett*, 2018 WL 2383534, at *5.  Indeed, as in *Bartlett*, "documents attached to the [Complaint]—and fatal to this claim's plausibility—plainly reveal that (a) multiple state and federal expert supervising government agencies acting within their statutory authority, and (b) the federal district court overseeing the consent decree's implementation, have extensively supervised [the defendant's] conduct and determined that [the defendant] complied fully with its responsibilities under CERCLA and the consent decree."  *Id.*; *Amidax Trading Grp.*, 671 F.3d at 147 (conclusory *allegations* that are contradicted by *evidence* referenced in the complaint are implausible and insufficient to withstand dismissal).  EPA's

repeated determinations here that the Remedy has been implemented properly, is working, and remains protective of human health and the environment are all the more authoritative because they were made when the Love Canal Site was deleted from the National Priorities List, and after three Five-Year Reviews, all subject to CERCLA's public notice and comment requirements.  (*See*, *supra*, at pp. 3-8; Nat'l Oil & Hazardous Substance Contingency Plan; Nat'l Priorities List, 69 Fed. Reg. at 12609; Exhibit 12, at 16; Exhibit 13, at 15; Exhibit 14, at 15).

**B.**     **The Allegations about Plaintiffs also Fail under *Twombly* and *Iqbal***

Also deficient under *Twombly* and *Iqbal* are the allegations the Plaintiffs make about themselves.  The Complaint provides very little information about Plaintiffs' alleged exposure, their injuries, or Defendants' connection to them.  The vast majority of Plaintiffs' allegations are conclusory.  (*See, e.g.,* Comp. ¶¶ 8, 9, 39, 40, 59, 76-86, 89-93, 99, 108-137, 140-160, 162-64, 166-180).

This Court recently dismissed strikingly similar environmental exposure claims on the basis that conclusory allegations of personal injury and property damage failed to meet the *Twombly*/*Iqbal* standard.  *Andres v. Town of Wheatfield,* No. 17-cv-377 (CRR) (W.D.N.Y. June 18, 2018).  *Andres* involved plaintiffs (who were represented by Plaintiffs' counsel in this matter) making virtually identical allegations that waste had migrated from a municipal landfill to their homes, causing them purported personal injuries and property-related damages.  *Andres*, No. 17-cv-377, at Dkt. 54 at ¶¶ 1, 22-23.  Judge Reiss, consistent with well-established Second Circuit precedent, required Plaintiffs to provide sufficiently individualized claims of exposure, injury, and damages:

> In this case, the first amended complaint remains too
> conclusory to survive the *Iqbal-Twombly* standard. . . .  Plaintiffs

> have ***not sufficiently individualized their injuries or damages.*** And
> they ***don't provide any specificity as to how, when or where they***
> ***were exposed; how, when or where such chemicals entered their***
> ***property; and they don't provide a linkage between their exposure***
> ***and their injuries***. It's very generalized statements to that effect.

*Andres,* No. 17-cv-377, Transcript, Dkt. 91, Appendix A, at 39:12-13, 39:19-24 (emphasis

added). The same conclusion applies here.

   ***With respect to exposure***, the Complaint recites generic references to the alleged

release of substances from the Love Canal Site, into the sewer system, soil and surface and

groundwater, as well as in connection with an unidentified "spill." (Comp. ¶¶ 112-117).

The timing and location are not specified, nor are the materials.[11] (*Id.* ¶ 121 ("[T]he release

of the contaminants into the environment surroundings [sic] and, consequently, as a result

of this breach, contaminants entered into the surrounding Plaintiffs' homes and rental

properties.")). Plaintiffs do not allege sufficient facts about when they were exposed, to

what materials they were exposed, or how, where, or when such materials entered their

property. (Comp. ¶ 3). *See, e.g.*, *Andres*, 17-cv-377, Transcript, Dkt. 91, Appendix A, at

39:25 ("If there is a pathway that [plaintiffs] are relying on, [plaintiffs] should articulate

what it is."); *Adinolfe v. United Techs. Corp.*, No. 10-CV-80840, 2011 WL 240470, at *2 (S.D.

Fla. Jan. 18, 2011) (dismissing class action complaint because, while "Plaintiffs make some

allegations suggesting that some parts of the [community] may be contaminated, . . . the

allegations fall short of actually alleging contamination of Plaintiffs' properties").

   ***With respect to injuries or damages***, while Plaintiffs claim that "[e]ach Plaintiff

has suffered physical injury as a result of Defendants [sic] misconduct and will continue to

---

[11]  Paragraphs 35 and 36 reference certain chemicals but make no Plaintiff-specific
allegations regarding which Plaintiffs, if any, were exposed to which chemicals, or which
chemicals were involved in the unidentified spill or present at any time in any location.

suffer physical injury in the future," the Complaint does not allege facts supporting this.
(Comp. ¶¶ 5, 40). Over and over again, the Complaint simply concludes that *all* plaintiffs
have suffered "injuries." (*Id.* ¶¶ 5, 40, 95, 109, 116, 119, 122, 135, 169, 171; *see also id.* ¶
127). Judge Reiss found this to be insufficient. *Andres,* No. 17-cv-377, Transcript, Dkt. 91,
Appendix A, at 39:19-20. Mrs. Amantia fails to allege any identifiable injury, generically
claiming to have suffered "damage to her personal property." (Comp. ¶ 88). Instead, the
Complaint provides a laundry list of conditions from behavioral problems to pulmonary
symptoms, without specifying their relevance to her. (*Id.* ¶ 5). This, too, is insufficient.
*Stearns v. Select Comfort Retail Corp.,* 763 F. Supp. 2d 1128, 1155 (N.D. Cal. 2010) (holding
plaintiffs' list of various injuries were "conclusory and generalized allegations [that] d[id]
not meet the pleading standard of Fed. R. Civ. P. 8."). Moreover, while the Complaint
alleges that Plaintiff Robert Salerno was diagnosed with an unspecified "cancer" and that
Plaintiff Dolly Salerno suffers from migraine headaches and other ailments, it fails to allege
sufficient facts concerning their purported injury or property damage. (Comp. ¶ 87).

   **With respect to causation**, the Complaint alleges no adequate facts concerning
a link between Plaintiffs' exposure and their alleged injuries or property damage. (Comp. ¶¶
87, 89-91). After all, only certain chemicals can cause certain injuries, and only at certain
doses. Plaintiffs do not allege that information. And without allegations about the
duration, type, or frequency of exposure, Plaintiffs' bald claims that their exposure caused
their generalized alleged injuries "stops short of the line between possibility and plausibility
of entitlement to relief." *Iqbal,* 556 U.S. at 678 (internal quotations omitted). *See also*
*Andres*, 17-cv-377, Transcript, Dkt. 91, Appendix A, at 39; *Pinares v. United Techs. Corp.*, No.
10-cv-80883, 2011 WL 240522, at *4 (S.D. Fla. Jan. 19, 2011) (dismissing claims, as

plaintiff alleged only that her cancer was "a direct and proximate result of [Defendant's] release of hazardous materials," but did "not allege that any contaminant touched [her] property" or "provide any factual basis for the allegation that Defendant is responsible for [her] cancer"); *Loccenitt v. City of New York,* No. 11-cv-5651 (PAC) (HBP), 2012 WL 3822213, at *2 (S.D.N.Y. Sept. 4, 2012) (holding plaintiffs' allegation that the facility was once a hazardous waste site was insufficient to plausibly allege a cause of action based upon current exposure); *Reece v. AES Corp.,* 638 F. App'x 755, 777 (10th Cir. 2016) ("The general statement that plaintiffs suffer ailments consistent with exposure to CCW is nothing more than a 'formulaic recitation,' as such, we do not give it much credence.") (citation omitted).[12]

## CONCLUSION

Plaintiffs' Complaint is both preempted and implausible. The Court, drawing on its "judicial experience and common sense," should dismiss the Complaint with prejudice. *Iqbal*, 556 U.S. at 679.

---

[12] Plaintiffs' attempt to assert a claim for medical monitoring also fails because (among other reasons) they have not adequately alleged the requisite manifest physical injury. A similar issue is presently before the Second Circuit on appeal in an unrelated case, *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 250 (N.D.N.Y. 2017), *appeal filed*, No. 17-cv-03948 (2d Cir. Dec. 8, 2017), and to the extent this Complaint were to survive, Defendants intend to move to dismiss such claims on a later date.

Dated:   August 20, 2018                    PHILLIPS LYTLE LLP


By: _____/s/ Kevin M. Hogan_____
       Kevin M. Hogan
       Lisa L. Smith
       Joel A. Blanchet
       Andrew P. Devine
       Deena K. Mueller-Funke
Attorneys for Defendants
*Occidental Chemical Corporation, Glenn Springs*
*Holdings, Inc., and Miller Springs Remediation*
*Management, Inc.*
One Canalside
125 Main Street
Buffalo, New York  14203-2887
Telephone No. (716) 847-8400
khogan@phillipslytle.com
lsmith@phillipslytle.com
ablanchet@phillipslytle.com
adevine@phillipslytle.com
dmueller-funke@phillipslytle.com

DECHERT LLP
Sheila L. Birnbaum
Douglas E. Fleming III
Mara Cusker Gonzalez
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599
sheila.birnbaum@dechert.com
douglas.fleming@ dechert.com
mara.cuskergonzalez@ dechert.com

NIAGARA FALLS
CORPORATION COUNSEL

By: */s/ Thomas M. O'Donnell*
          Thomas M. O'Donnell
          Douglas A. Janese
Attorneys for Defendant
*City of Niagara Falls*
City Hall, 745 Main Street, PO Box 69
Niagara Falls, New York  14302-0069
Telephone:  (716) 286-4409


HODGSON RUSS LLP

By: */s/ Jeffrey C. Stravino*
          Jeffrey C. Stravino
Attorneys for Defendant
*GHD Services, Inc. individually and as alleged
successor in interest to Conestoga Rovers &
Associates*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York  14202
Telephone:  (716) 856-4000


PILLINGER MILLER TARALLO LLP

By:  */s/ Jeffrey D. Schulman*
          Jeffrey D. Schulman
Attorneys for Defendant
*NRC NY Environmental Services, Inc.
individually and as alleged successor in interest to
OP-Tech Environmental Services*
126 North Salina Street, Suite 215
Syracuse, New York 13202
Telephone:  (914) 703-630


Doc #01-3140345.7

RUPP BAASE PFALZGRAF
CUNNINGHAM

By: */s/ Corey Weber*
          Jeffrey Baase
          Corey Weber
Attorneys for Defendant
*Niagara Falls Water Board*
424 Main Street
1600 Liberty Building
Buffalo, New York 14202
Telephone:  (716) 854-3400


HURWITZ & FINE, P.C.

By: */s/ David R. Adams*
          David R. Adams
          Agnieszka Anna Wilewicz
Attorneys for Defendant
*Sevenson Environmental Services, Inc.*
1300 Liberty Building
Buffalo, New York  14202
Telephone:  (716) 849-8900


THE KNOER GROUP, PLLC

By: */s/ Robert E. Knoer*
          Robert E. Knoer
Attorneys for Defendant
*Roy's Plumbing, Inc.*
424 Main Street, Suite 1820
Buffalo, New York 14202
Telephone:  (716) 332-0032

SUGARMAN LAW FIRM, LLP

By: */s/ Brian Sutter*
          Brian Sutter
Attorneys for Defendant
*Scott Lawn Yard, Inc.*
1600 Rand Building
14 Lafayette Square
Buffalo, New York 14203
Telephone:  (716) 847-2523