UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

Class Representatives Dolly      )
Salerno and Diane Amantia,       )
individually and on behalf       )
of all others similarly          )
situated,                        )
                                 )
        Plaintiffs,              )
                                 )
            v.                   )       Case No. 1:18-cv-304
                                 )
City of Niagara Falls;           )
Niagara Falls Water Board;       )
Occidental Petroleum             )
Corporation, individually and    )
as successor in interest to      )
Conestoga Rovers &               )
Associates; Miller Springs       )
Remediation Management, Inc.;    )
Sevenson Environmental           )
Services, Inc.; Gross PHC        )
LLC, individually and as         )
successor in interest to         )
David Gross Contracting          )
Corp. and/or Gross Plumbing      )
and Heating Co., Inc.; NRC       )
NY Environmental Services,       )
Inc., individually and as        )
successor in interest to         )
Op-Tech Environmental            )
Services; Roy's Plumbing,        )
Inc.; and Scott Lawn Yard,       )
Inc.,                            )
                                 )
        Defendants.              )

## OPINION AND ORDER

        This case arises out of efforts to clean up and control

toxic chemicals discovered decades ago at Love Canal.  Plaintiffs

Dolly Salerno and Diane Amantia claim that the City of Niagara

Falls, other governmental organizations and various private

entities failed in the remediation and management of the Love

Canal site, resulting in toxic chemicals spreading into local neighborhoods.  As a result of exposure to such chemicals, Plaintiffs have allegedly suffered mental, physical and financial harm.

Now before the Court are Defendants' joint and individual motions to dismiss.  The joint motion asserts that Plaintiffs' claims are preempted by federal law and are too conclusory to state plausible claims for relief.  Certain individual Defendants have offered additional arguments for dismissal, including defenses related to notice and timeliness.  For the reasons set forth below, the motions to dismiss are granted.

## Factual Background

Plaintiffs and the putative class representatives are current or previous residents of the Love Canal area of Niagara Falls, New York.  The Love Canal site ("Love Canal" or "Site") is an abandoned canal that was used as a waste disposal area between 1942 and 1954.  The First Amended Complaint alleges that Hooker Chemicals & Plastics Corporation (now Defendant Occidental Chemical Corporation) disposed of 22,000 tons of drummed liquid chemical waste during that time period.  The City of Niagara also allegedly disposed of municipal waste from 1953 to 1954.

Testing at the Site in the late 1970s revealed that numerous toxic chemicals had migrated into the surrounding neighborhoods. In 1978, the New York State Department of Health identified more

than 80 chemicals in the original disposal area and adjacent soils.  That same year, the New York State Commissioner of Health ordered the closure of a local public school and recommended that pregnant women and children under the age of two immediately evacuate the area.  Residents were also advised to avoid using their basements as much as possible and to avoid consuming home-grown produce.

In August 1978, President Carter issued an emergency declaration providing federal funding for remedial work to contain the chemical waste, and for the relocation of nearby residents.  In October 1978, remedial operations began with the installation of a system of drains, trenches, and wells to collect leachate at the Site.  The leachate was ultimately treated at an on-site treatment facility before being discharged into the Niagara Falls sanitary sewer system.

In 1980, President Carter issued a second emergency declaration providing additional funds to establish the Emergency Declaration Area ("EDA") and purchase homes for those residents who were evacuated or wanted to leave.  After a near-complete evacuation, the government placed an eight-foot high chain-link fence around the original disposal area, vacant houses were demolished, and a 22-acre clay cap with a minimum three-foot thickness was installed.  That same year, Congress passed the Comprehensive Environmental Response, Compensation, and Liability

Act ("CERCLA") which, among other things, outlined a government-mandated remedy ("Remedy") of the Site that included ongoing monitoring and maintenance.  The Environmental Protection Agency ("EPA") and the New York State Department of Environmental Conservation ("DEC") were jointly tasked with the Site's remediation.

Between 1978 and 1982, a number of cleanup measures were conducted at the Site.  In July 1982, the EPA issued a Decision Memorandum ("DM") documenting remedial activities, approving additional federal funding, and identifying eight additional tasks for Site cleanup.  Those future measures included creating and installing an expanded 40-acre cap, hydraulically cleaning the sewers, and installing clean soil and vegetation.

In 1994, Occidental Chemical Corporation ("Occidental") agreed to a settlement of claims with the State of New York. Pursuant to a consent order, Occidental became responsible for the continued operation and maintenance of the Love Canal Treatment Facility, the cap, well monitoring, and groundwater sampling and analysis.  Occidental assumed that responsibility in April 1995.  Until July 1, 1998, operation and maintenance under the consent order was carried out by an Occidental affiliate, Defendant Miller Springs Remediation Management.  Since July 1, 1998, Occidental's responsibilities have been carried out by one of its subsidiaries, Defendant Glenn Springs Holdings, Inc.

Glenn Springs has contracted with Defendant GHD Services, Inc. ("GHD") to perform daily operations.

Defendants submit that the EPA issued its Preliminary Close-Out Report for the Remedy in September 1999, and a Final Close-Out Report in March 2004. The report reflects the EPA's finding that construction of the Remedy was complete, that it was implemented properly and was protective of human health and the environment. ECF No. 75 at 6. The only remaining actions to be taken consisted of monitoring, maintenance, and ongoing compliance. *Id.* The EPA has continued to conduct Five-Year Reviews, commencing in 2003, the latest of which was completed in 2019. That most recent Five-Year Review concluded that the Remedy remained effective and was working properly.

In January 2011, the Niagara Falls Water Board ("NFWB") was performing sewer repair work in the area of 96th Street and Colvin Boulevard when a contractor, Defendant Scott Lawn Yard, found contamination. It was determined that the contamination came from the Love Canal site. Glenn Springs and GHD, with oversight by state agencies, performed remediation of the Colvin Boulevard site. Investigation of the site determined that the likely source of contamination was an isolated historical source, and not the result of a failure of the Love Canal containment Remedy.

Plaintiffs claim that regardless of whether that finding is

correct, the Colvin Boulevard discovery means that Defendants'
original cleanup of the storm and sewer systems was negligent.
They also allege that the Niagara Falls sewer system connects to
their properties, thus providing a path for dangerous
contaminants.  "On information and belief, these and other
hazardous substances originated at the Love Canal Landfill site
and migrated to Plaintiffs' properties through the storm and
sewer systems due to the negligent, careless and/or reckless
conduct of the Defendants."  ECF No. 68 at 16, ¶ 85.

The First Amended Complaint ("FAC") sets forth a list of
contaminants Plaintiffs believe are present at their properties.
Testing has reportedly revealed that some of the contaminants
exceed state and federal health safety standards.  Plaintiffs
also detail the known health effects of those contaminants.  As
to specific experiences, Plaintiff Dolly Salerno claims that she
has suffered from migraine headaches, dizzy spells, arrhythmia,
and anxiety.  Plaintiff Diana Amantia was compelled to move from
her home, and in March 2017 her husband died of a brain tumor.
Mrs. Amantia believes that her husband's illness and death were
caused, in whole or in part, by exposure to Love Canal
contaminants.  Both Mrs. Salerno and Mrs. Amantia claim that
their properties lost value as result of contamination.
Plaintiffs assert that others in the putative class have been
exposed and suffered similar harm.

The FAC brings four state law causes of action: negligence, strict liability, nuisance, and trespass.  For relief, Plaintiffs seek monetary damages and the establishment of a medical monitoring fund, as well as punitive damages.  Defendants are various governmental organizations and private companies who were involved in the remediation of Love Canal and/or the Colvin Boulevard cleanup.  Defendants previously moved to dismiss on the basis of federal preemption and failure to state plausible claims for relief, and the Court granted the motion.  The Court also granted leave to amend.  Plaintiffs timely filed their FAC, and Defendants again move to dismiss.  As in their initial motion, Defendants argue that Plaintiffs' claims are implausible, conclusory, and preempted by federal law.  As noted above, several individual Defendants have supplemented the joint motion with their own arguments for dismissal, raising additional issues including timeliness and lack of proper notice.

## **Discussion**

### I.   **Motion to Dismiss Standard**

A Rule 12(b)(6) motion enables a court to consider dismissing a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## II.  Preemption

Defendants argue that the causes of action in the FAC, each of which bring state common law claims, are barred by CERCLA under the doctrine of conflict preemption. The conflict preemption doctrine provides that "a state law may be preempted to the extent that it actually conflicts with a valid federal statute." *Ray v. Atl. Richfield Co.*, 43 U.S. 151 (1978). As an example, the doctrine applies "where it is impossible for a private party to comply with both state and federal law and where under the circumstances of a particular case, the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000) (internal brackets, citations, and quotation marks omitted).

8

"CERCLA is a comprehensive federal law governing the remediation of sites contaminated with pollutants." *Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc.*, 423 F.3d 90, 94 (2d Cir. 2005). Under CERCLA, a defendant who has acted pursuant to a consent decree is prohibited from commencing any remedial action except for those expressly authorized in the consent decree. *See* 42 U.S.C. § 9622(e)(6). As this Court discussed in its prior Opinion and Order, the Second Circuit recently addressed conflict preemption in the CERCLA context in *Bartlett v. Honeywell Int'l, Inc.*, 737 F. App'x 543 (2d Cir. 2018). In that case, homeowners living near a waste disposal area designated as a Superfund site brought a state court action against Honeywell International ("Honeywell"), which had been partially responsible for site clean up under CERCLA. Plaintiffs asserted claims for negligence, nuisance and trespass, and claimed that as a result of Honeywell's actions toxic chemical particles had migrated from the site and caused exposure to people and property in the area.

Certain holdings and conclusions in the *Bartlett* decision are relevant to this case. The Second Circuit noted that once the DEC and the EPA reviewed and approved the remedial activities undertaken by Honeywell, those activities "became part of the binding consent decree" and the plaintiffs' filings were preempted as impermissible attacks on the government-mandated

9

remedy itself.   737 F. App'x at 550.   The court also found that "CERCLA preempts the residents' attempts to impose state tort law liability on [the defendant] for not going above and beyond a testing regime which the EPA itself described as 'extensive.'" *Id.* at 551.   Both the district court and the Second Circuit distinguished between allegations that "amount to nothing more than a belated challenge to the adequacy of the [government-mandated remedy] itself" and allegations that Defendants failed "to comply with or properly implement the [government-mandated remedy]."   *Id.* at 549.

Here, Plaintiffs submit that the relief they are seeking would not impair either compliance or implementation of the Remedy.   Defendants respond that the EPA's latest Five-Year Review found not only compliance with the mandated remediation, but also that the remediation had been successful.[1]   Those findings included remediation of the Colvin Boulevard site, and Plaintiffs' common law claims run counter the EPA's conclusions. Citing *Bartlett*, Defendants argue that the EPA approval has become part of the binding consent decree, and that Plaintiffs'

---

[1] The Court previously granted Defendants' motion to supplement the record to include the EPA's Five-Year Reviews. Because those Reviews were cited in the Complaint, their admission into the record did not require converting the pending motion to dismiss to a motion for summary judgment.   The FAC deleted specific references to EPA materials, yet the substance of the FAC as compared to the initial Complaint makes clear that those materials were a substantial source of information upon which Plaintiffs' factual allegations are based.

claims therefore constitute an impermissible attack on the federally-mandated Remedy.

In its prior Opinion and Order, the Court found that allegations attacking the Remedy are "explicitly forbidden under CERCLA." ECF No. 65 at 15. The Court also concluded that Plaintiffs' initial Complaint failed to make "any specific allegations that Defendants were shirking their responsibilities under the Remedy." *Id.* at 15, 16. The FAC claims that toxic chemical migrated to Plaintiffs' properties from Love Canal through the storm water and sewer systems, thus suggesting that either that the Remedy itself was inadequate or that implementation of the Remedy was flawed. A consistent series of EPA approvals suggests that such claims are implausible.

Plaintiffs rely heavily upon CERCLA's savings clause, which states:

> Nothing in this chapter shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants. The provisions of this chapter shall not be considered, interpreted, or construed in any way as reflecting a determination, in part or whole, of policy regarding the inapplicability of strict liability, or strict liability doctrines, to activities relating to hazardous substances, pollutants, or contaminants or other such activities.

42 U.S.C. § 9652(d). The purpose of the savings clause is to make clear that CERCLA does not bar all state law claims related to hazardous substances, and that such claims may be brought in

11

state court.  *See Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (recognizing that "CERCLA does not expressly preempt applicable state law" and "is not such a comprehensive scheme that it cannot be supplemented by state law"); *New York v. Ametek, Inc.*, 473 F. Supp. 2d 432, 433 (S.D.N.Y. 2007) ("It is clear from the language of the [savings clauses] that CERCLA does not expressly preempt state law."). The clause is therefore invoked when there is a question of complete preemption.  *See, e.g., Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487-JTC, 2013 WL 4505454, at *6 (W.D.N.Y. Aug. 22, 2013).  The question in this case is not whether CERCLA *completely* preempts state law, but whether Plaintiffs' claims generate a conflict with a federally-approved remedy.  And it is well established that preemption is available to defendants notwithstanding the presence of a savings clause.  *See  Geier v. American Honda Motor Co.*, 529 U.S. 861, 869-71 (2000).

The claims in this case fall into three general categories: (1) negligent disposal of chemicals at Love Canal in the 1940s and 1950s; (2) negligent remediation at the Love Canal Site between the 1970s and the 1990s, as well as ongoing maintenance and regular inspections by the EPA; and (3) the discovery of chemicals and subsequent remediation during a sewer repair project at Colvin Boulevard in January 2011.  With respect to the first two categories, any state law claims related to either the

12

process of disposal and/or remediation at Love Canal were settled
by means of a consent order, approved by the federal government,
and are preempted.  *See New Mexico v. Gen. Electric Co.*, 335 F.
Supp. 2d 1185, 1226 (D.N.M. 2004) (where plaintiffs seek "to
recover additional damages from parties complying with an EPA
order on the theory that the EPA's chosen remedy is somehow
inadequate, a collision . . . between state tort damages remedies
and the CERCLA statutory and regulatory scheme appears
inevitable"); *Coastline Terminals of Conn., Inc. v. USX Corp.*,
156 F. Supp. 2d 203, 208–09 (D. Conn. 2001) (plaintiff's claims
pursuant to state statutory and common law "disrupt[ ] CERCLA's
settlement incentive scheme by providing a potential avenue for
recovery against a potentially responsible party that has settled
a CERCLA action" and are preempted).  By questioning the actions
related to the initial disposal and remediation, Plaintiffs are
challenging conduct that occurred pursuant to CERCLA and the
consent decree.  Such an attack on the decree itself is
preempted.  *See Bartlett*, 737 F. App'x at 550.

The third category, relating to the Colvin Boulevard site,
presents a closer call.  The FAC alleges negligent acts in the
course of remediating the site.  Although not part of the initial
Love Canal remediation and consent order, the 2011 work was
nonetheless performed with state oversight and reviewed by the
EPA, which found that the repair was effective and that there was

no future potential for contamination.  ECF No. 75-15, at 21-22.
As discussed in *Bartlett*, it would be improper to ask Defendants
to "go above and beyond" those measures already overseen,
certified and approved by expert agencies.  737 F. App'x at 551;
*cf. New Mexico*, 467 F.3d at 1249-50 ("Any relief provided the
State would substitute a federal court's judgment for the
authorized judgment of . . . [the expert government agencies]
that the cleanup is not only comprehensive but flexible and
dynamic, readily adjusting as new data is received.").

Plaintiffs emphasize that they are seeking monetary damages,
and that no element of the Love Canal remedy ever provided them
such relief.  At least one court in this Circuit has held that a
plaintiff may not void preemption by merely requesting monetary
damages.  *See Town of Halfmoon v. Gen. Elec. Co.*, 105 F. Supp. 3d
202, 218 (N.D.N.Y. 2015) ("Plaintiffs' assertion that they simply
seek monetary damages, and do not directly challenge the dredging
project, is similarly without merit."); *see also New Mexico*, 467
F.3d at 1249-50 ("The State's argument that it is not seeking to
alter or expand the EPA's response plan but rather only to
acquire money damages falls on deaf ears. . . .  Accepting the
State's argument might place GE and ACF in the unenviable
position of being held liable for monetary damages because they
are complying with an EPA-ordered remedy which GE and ACF have no
power to alter without prior EPA approval.").

The Seventh Circuit has noted that "[t]he precise contours of CERCLA preemption over state environmental cleanup actions or municipal ordinances that affect federal removal or remedial actions are not easy to discern."  *Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008).  The FAC summarizes Plaintiffs' claims as including "wrongful dumping of toxic substances, the negligent, reckless, and/or ineffective remediation of such contamination, the negligence and/or reckless performance of work in, around, and adjacent to the, sewers in proximity to Love Canal and repeated failures to alert the public at large . . . ."  The FAC also makes clear that federal and state regulators have been intimately involved with ongoing remediation of the toxic chemicals discovered decades ago at Love Canal.  Defendants were bound to take action within the confines of the government-prescribed Remedy.  As Plaintiffs' claims conflict with federal mandates and/or federally-approved work, their allegations remain preempted.

## II. Plausibility

In addition to CERCLA preemption, the Court dismissed the initial Complaint for failure to state plausible claims for relief.  Specifically, the Court characterized the Complaint as "completely speculative" and based upon "generalized statements."  ECF No. 65 at 9-11.  The FAC offers additional specifics, but still leaves substantial gaps on key questions of migration,

exposure, and causation.

The migration allegations are based upon the "information and belief" that chemicals have traveled through storm and sewer systems.  There are no allegations, however, about which direction those systems flowed such that chemicals from Love Canal could plausibly reach Plaintiffs' homes.[2]  Allegations of exposure are similarly vague, as the FAC contends that each named Plaintiff was exposed the entire time she lived at her home.  Despite the EPA's conclusion that the Remedy was implemented successfully and was protective of human health, Plaintiffs submit that within just a few years of remediation they began suffering exposure to toxic chemicals at dangerous levels.  Both exposure and causation seem to be supported primarily by guesswork, as Plaintiffs contend that since chemicals discovered at their properties were also among the multitude of chemicals founds at Love Canal, Love Canal must be the source.  As the Supreme Court has made clear, a complaint must bring claims that rise "above the speculative level." *Twombly*, 550 U.S. at 555.  The FAC does not pass that test.

Furthermore, Plaintiff Diana Amantia does not allege any personal injuries.  Plaintiff Dolly Salerno claims that arrhythmia and heart rhythm changes are caused by barium and

---

[2] At a prior hearing, the Court questioned whether Plaintiffs were alleging that chemicals "traveled backwards to [their] residences."  ECF No. 66 at 52:11-17.

phenol, though neither chemical is alleged to have been detected at her property.  ECF No. 68 at ¶ 86, 107.  Her allegations of anxiety and panic attacks are not linked to any specific chemicals.  Claims of headaches and dizzy spells are connected only generally to "toxic exposure."  *Id.*, ¶ 113.  Accordingly, claims of harm are similarly speculative.

The Court has given Plaintiffs the opportunity to amend their claims to meet the plausibility standard.  The FAC provides new explanations for their theories, such as the allegation that chemicals flowed through the storm water and sewer systems, but still reflect only a *possibility* that their problems stem from Love Canal.  Details of test results, accepted as true, demonstrate that there are indeed toxic chemicals at Plaintiffs' properties.  Speculation about the source of those chemicals and their link to a range of health issues is insufficient. Accordingly, the Court must again dismiss the Plaintiffs' allegations for failure to state a plausible claim.

## III. Individual Defendants

Various individual Defendants have moved to dismiss, incorporating the arguments in the joint motion and adding some of their own reasons for dismissal.

### A.   Roy's Plumbing

Roy's Plumbing, Inc. ("Roy's") was allegedly retained by Glenn Springs to undertake the sewer cleaning and replacement

aspect of the remedial activity at the Colvin Boulevard site.
The FAC claims that Roy's is liable for using a "jetting" device
to clean the roadway and sewers following the Colvin Boulevard
discovery, thereby disbursing toxins into the environment and
onto Plaintiffs' properties.  The FAC further claims that Roy's
failed to inform homeowners that toxins had been disbursed, and
instead represented that their homes were safe.

Roy's contends that the named Plaintiffs have not
sufficiently alleged their properties were near the area of the
alleged "jetting."  "The harm alleged in the [FAC] appears to be
based solely on unspecified proximity of Roy's work to the sewer
release."  ECF No. 83 at 6.  Nor are there any specific
allegations linking the Roy's cleaning of the site to Plaintiffs'
alleged injuries.

When compared to the original Complaint, there are no
substantive changes to any of the allegations against Roy's.  ECF
No. 75-18 at 49-50.  The prior Complaint was dismissed for
failure to state a claim.  Without any substantive amendments,
the current claims must also be dismissed.

**B.   GHD Services, Inc.**

GHD, formerly known as Conestoga-Rovers & Associates, Inc.,
incorporates the joint motion and offers its own filing as well.
The FAC alleges that Glenn Springs retained GHD as an
environmental consultant in the investigation and remediation of

the Colvin Boulevard release.  Plaintiffs further claim that GHD
failed to perform its duties properly, including: failure to
adequately monitor air, soil, and surface water around the Love
Canal Site; failure to advise government agencies and local
resident about exposure to toxic chemicals; and unlawfully
releasing toxic chemicals.  Those same allegations were present
in the original Complaint.

GHD argues that the Court should dismiss the FAC for the
same reasons it dismissed the initial Complaint.  Although the
allegations against GHD are not substantially different in the
FAC, Plaintiffs have added details about the conditions and
activities around Love Canal, activities at the Colvin Boulevard
site, and Plaintiffs' injuries and exposures.  As set forth
above, however, those additional facts fail to raise Plaintiffs'
claims above the speculative level.  Accordingly, their claims
against GHD are dismissed.

C.   **Niagara Falls Water Board**

NFWB, as a municipal entity, argues that Plaintiffs failed
to serve notices of claim in accordance with New York General
Municipal Law § 50-e.  That provision requires a notice of claim
to be served within 90 days after a claim arises.  The law also
differentiates between a notice of claim mailed from within the
State of New York and a notice mailed from outside New York.
While claims mailed from within New York are deemed served upon

deposit at the post office, claims sent from outside New York are deemed served upon receipt of the notice.  *See* N.Y. Gen. Mun. Law § 50-e(3)(c).  NFWB alleges that, in this case, Plaintiffs sent their notices from outside New York and the notices were never received.  Plaintiffs have conceded that the notices of claim were never delivered.  ECF No. 77-3, ¶ 10.

Plaintiffs counter that NFWB was on notice of their claims by virtue of its association with the City of Niagara Falls. NFWB contends that the City is a separate legal entity under New York law.  *See Wilson v. City of Buffalo*, 298 A.D. 994, 996 (4th Dep't 2002).  Moreover, while actual knowledge may be considered when a court is presented with a petition for leave to serve a late claim, *see* N.Y. Gen. Mun. Law § 50-e(5), no such petition was filed here.

NFWB also contends that after a notice of claim is served, a complaint or moving papers must allege that at least 30 days have elapsed after service.  *See* N.Y. Pub. Auth. Law § 1230-t(1). Accordingly, a claimant must wait 30 days after serving a notice of claim before commencing an action.  The FAC in this case contains no such allegation.

NFWB's final argument is that it did not exist until 2002, long after the alleged dumping at Love Canal.  Most of the remediation efforts were completed prior to that date. Consequently, NFWB cannot be held liable for any conduct alleged

prior to 2002.  This latest point is valid, and NFWB's procedural arguments are also persuasive.  The claims against NFWB are therefore dismissed.

### D.   City of Niagara Falls

Like NFWB, the City of Niagara Falls is a party to the joint motion to dismiss and has submitted an independent argument related to timeliness.  The City argues that under New York law, a lawsuit alleging tortious conduct by a city must be commenced within one year and ninety days after the happening of the event upon with the claim is based.  *See* N.Y. Gen. Mun. Law § 50-I. Consequently, allegations related to dumping of toxic chemicals in the 1950s are time barred.  The City also notes that maintenance and operation of water and sewer facilities in the Love Canal area was transferred to the NFWB in 2003.

Plaintiffs counter that the New York limitations period is preempted by CERCLA, and that under federal law the limitations period began on the date they received the sampling data that showed contamination.  *See Freier v. Westinghouse Elec. Corp.,* 303 F.3d 176 (2d Cir. 2002).  Plaintiffs report that they received such data in November and December 2016.  They filed their notice of claim within 90 days thereafter.  They also contend that the date of accrual, if disputed, is an issue of fact.  The Court need not address this issue, since for the reasons discussed above, Plaintiffs' claims are preempted and

speculative.   The claims against the City are therefore dismissed.

## Conclusion

For the reasons set forth above, Defendants' motions to dismiss (ECF Nos. 75, 76, 77, 78, and 79) are granted.


DATED at Burlington, Vermont, this 30th day of September, 2020.


/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge